IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRISTIE LAND,<br><br>    Plaintiff<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of<br>Social Security,<br><br>    Defendant. | Case No. 12 C 9189<br><br>**Magistrate Judge Arlander Keys** |

## **MEMORANDUM OPINION AND ORDER**

This case is before the Court on Plaintiff Kristie Land's motion for summary judgment. [Dkt. 17-18] Ms. Land seeks judicial review of the final decision of the defendant Commissioner of Social Security ("Commissioner") denying her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). Ms. Land argues that summary reversal or remand is appropriate because the Administrative Law Judge's ("ALJ") credibility assessment was not supported by substantial evidence and the ALJ failed to adequately account for Ms. Land's mental impairments in assessing her residual functional capacity ("RFC"). The parties consented to the jurisdiction of this Court pursuant to 28 U.S.C §636(c). For the reasons set forth below, Ms. Land's motion is denied. The Commissioner's May 23, 2011, decision is affirmed.

## BACKGROUND & PROCEDURAL HISTORY

Ms. Land applied for DIB and SSI on May 15, 2009. Record at 114. The application was denied initially and on reconsideration. On timely request, a hearing was held before ALJ Michael E. Finnie on March 24, 2011. The ALJ presided over the hearing via video-teleconference from Dallas, Texas, and Ms. Ms. Land appeared in Pine Bluff, Arkansas. R. 23.

The ALJ issued an unfavorable decision on May 23, 2011, finding that Ms. Land was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. R.32. The ALJ found that Ms. Land retains the RFC to perform "light work" limited to simple routine tasks with no more than occasional contact with the general public. R.26. The ALJ also found that Ms. Land's allegations were "not fully credible." R. 29.

On August 30, 2012, the Appeals Council declined to review the ALJ's decision, causing it to constitute the final decision of the Commissioner. R. 5-9; 20 C.F.R. §§404.981, 416.1481.

## MEDICAL RECORD

Ms. Land was born on December 31, 1976, making her thirty-four years old at the time of the hearing. R. 114. She is single with three minor children. R42, R. 115. She stands 5'2", weighs approximately 227 pounds, has a GED, and completed Certified Nursing Assistant ("CNA") training. R. 43, R. 136, R. 144. Ms. Land performed heavy work as a CNA for two years. R.

138. Ms. Land last performed substantial gainful activity ("SGA") in 2009, and is insured for DIB purposes through December 31, 2014. R. 131.

Since March 24, 2008, Ms. Land has been treated for diabetes mellitus, lower extremity edema, hypertension, possible diabetic neuropathy, degenerative joint disease, and fatigue. R. 231, R. 244-9, R. 251, R. 308-15, R. 567-8. During that same time period, she presented at emergency rooms numerous times for nausea, vomiting, diarrhea or loose stools, migraines, abdominal pain, and gastroparesis. R. 187-91, R. 220, R. 507, R. 531-3, R. 615-53. Ms. Land has also been diagnosed with obesity and sleep apnea. R. 226.

On October 22, 2008, at the Milwaukee Eye Care Associates, Ms. Land was seen for a complaint of diabetes mellitus with no diabetic retinopathy. R. 175-177.

In 2008, Jonathan Marquez, M.D., Ms. Land's primary care doctor, noted mood swings. R. 244-49. At an assessment performed on November 18, 2008, by a psychiatrist and her social worker, Ms. Land was found to have a major depressive disorder with a need to rule out a bipolar disorder. R. 178-84. At that time, her Global Assessment of Functioning ("GAF") was 55. *Id.* She was referred for talk therapy. R. 184.

On January 11, 2009, Ms. Land was treated at Aurora Sinai Medical Center with the chief complaint of nausea and vomiting.

R. 187-220. Her blood pressure was 145/90 and her history of non-insulin dependent diabetes mellitus and hypertension were noted. R. 189.

On January 22, 2009, Ms. Land began treatment with Kenneth Erdmann, M.D., of Renew Counseling Services. R. 226. On February 12, 2009, Ms. Land reported feeling anxious and depressed. She reported auditory hallucinations. Dr. Erdmann diagnosed Ms. Land with depression with psychotic features. R. 225. Dr. Erdmann prescribed Benadryl, citolopram (Celexa) and temazepam (Restoril). R. 225. On July 20, 2009, Dr. Erdmann increased her dosage of Topamax and Wellbutrin, and continued her temazepam. On September 21, 2009, Ms. Land was prescribed Ambien and clonazepam (Klonopin). R. 274, R. 276.

On May 22, 2009, Ms. Land saw Dr. Jonathon Marquez for a follow up appointment for her diabetes and high blood pressure. R. 230-31. At that time, Ms. Land reported having tingling of both hands and feet. Her blood pressure was 130/90 and she was in no acute distress. R. 230. Her extremities revealed no edema and full range of motion of upper and lower extremities. R. 231.

On July 20, 2009, Dr. Erdmann examined Ms. Land and found her to be "oriented times three." R. 274. Ms. Land denied hallucinations at that time. Dr. Erdmann's impression was that Ms. Land had depression and impulse control disorder. *Id.*

On August 24, 2009, a non-examining State agency reviewer, Syd Foster, D.O., completed a Physical RFC assessment form. He opined that Ms. Land was capable of light work. R. 264-71.

On November 2, 2009, Ms. Land underwent a consultative examination by Richard J. Ertl, Ph.D. R. 281-86. Dr. Ertl diagnosed Ms. Land with an adjustment disorder with a depressed mood secondary to medical conditions, intermittent explosive disorder, and he noted her history of depression with psychotic features in the form of hallucinations. R. 285. Dr. Ertl opined that Ms. Land's "ability to withstand routine work stress and to adapt to changes on the job most likely would be variable, given her history of being easily irritated and angered by others." R. 286.

On November 23, 2009, a non-examining State agency reviewer, Jack Spear, Ph.D., completed a Mental RFC assessment form. R. 288-90. He opined that Ms. Land has moderate limitations in her ability to understand, remember, and carry out detailed instructions; complete a normal work week; work in coordination with others; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers; respond to changes in a work setting; and set realistic goals. R. 288-89. Dr. Spear also completed a Psychiatric Review Technique form finding that Ms. Land's affective disorders cause moderate

5

difficulties in maintaining social functioning, concentration, persistence, or pace. R. 292-305.

On January 19, 2010, Dr. Marquez treated Ms. Land in a follow-up appointment, her chief complaint being diabetes and high blood pressure. R. 308-09. Her blood pressure was 130/90. *Id.* Her extremities revealed no edema and full range of motion was noted of upper and lower extremities. R. 309.

On June 19, 2010, Ms. Land was admitted to St. Vincent Health Systems' emergency room for an injury to her right and left shoulder and elbow, apparently the result of a car accident. R. 466. She also reported pain in her lower back. She had contusions to her right and left shoulders and elbow. *Id.*

On July 19, 2010, Ms. Land was treated at Jefferson Regional Medical Center; at that time, she reported experiencing continued neck and back pain following the car accident on June 9, 2010. R. 560-65. The diagnosis was muscle strain. *Id.*

**HEARING BEFORE THE ALJ**

At the hearing before the ALJ, Ms. Land testified that she suffers from high blood pressure and diabetes, which cause swelling in her legs, hands, and feet. R. 43-45, R. 54-55, R. 80. She also suffers from nausea, headaches, back ache, and bipolar depression. R. 45-48. Since she developed depression, Ms. Land has been unable to interact and socialize with others. She does not go out as much as before. R. 48-49. She has trouble

6

getting along with her two older children, does not have any friends, has trouble getting along with her doctors, and even argues with family members of the friend that is helping her out. R. 50-2, R. 64.

Ms. Land testified that, in a typical day, she might do some light dusting, but she testified that her daughters do most of the household chores when they are home from school. R. 53-4. She cannot do laundry because of the bending and pain in her back. R. 54. She has little energy and overreacts to others "all the time." R. 55-57. She tries to go to church, but can only go when she is feeling well enough and, even then, gets pain when sitting too long with swollen feet. R.58-61. She can go to the store to get a prescription, but cannot make it through a grocery shopping trip due to pain, so she does not even bother to go. R. 59, R. 61. Ms. Land testified that she tried, but could not do factory work, due to pain in her arms from old fractures. R. 78-9.

Dalewood Hart appeared and testified as Ms. Land's witness R.70. He spoke about Ms. Land's conditions, stating that she has periods of shutting down, where she cannot recall things that happened during that time. She lashes out, and does not get along with others, including her doctors. R. 71. Mr. Hart pays Ms. Land's bills for her, makes sure she takes her medication, and even tends to her children. R. 71-2, 74.

7

Michael Gartman appeared and testified as a Vocational Expert ("VE") at the hearing. R. 74-78. The ALJ posed a hypothetical reflecting his ultimate RFC assessment. Mr. Gartman testified that a person with that RFC could not do Ms. Land's past work, but could do other work at the light, SVP 2 level. R. 76. The ALJ asked the VE whether those jobs would still be available if the hypothetical person were limited to sedentary work, and the VE responded that they would not. R. 77.

**ALJ's DECISION**

The ALJ found Ms. Land to have the following severe impairments: diabetes mellitus, hypertension, sleep apnea, obesity, affective disorder, and impulse control disorder R. 25. The ALJ found that Ms. Land had the RFC to lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit for up to 6 hours each in an 8 hour workday; and perform jobs limited to simple routine tasks that required no more than occasional contact with the general public R. 26. Given this RFC, the ALJ determined that Ms. Land could perform light and unskilled occupations such as an assembler/machine operator, bakery worker, and packing line worker. R. 31-32.

**DISCUSSION**

**APPLICABLE LAW**

An individual claiming a need for DBI or SSI must prove

that she has a disability under the terms of the SSA. In determining whether an individual is eligible for benefits, the social security regulations require a sequential five-step analysis. First, the ALJ must determine if the claimant is currently employed; second, a determination must be made as to whether the claimant has a severe impairment; third, the ALJ must determine if the impairment meets or equals one of the impairments listed by the Commissioner in 20 C.F.R. Part 404, Subpart P, Appendix 1; fourth, the ALJ must determine the claimant's RFC, and must evaluate whether the claimant can perform her past relevant work; and fifth, the ALJ must decide whether the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). At steps one through four, the claimant bears the burden of proof; at step five, the burden shifts to the Commissioner. *Id.*

A district court reviewing an ALJ's decision must affirm if the decision is supported by substantial evidence and is free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir.2002). Substantial evidence is "more than a mere scintilla"; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In reviewing an ALJ's decision for

9

substantial evidence, the Court may not "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir.2007) (*citing Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir.2003)). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir.1990).

An ALJ must articulate his or her analysis by building an accurate and logical bridge from the evidence to her conclusions, so that the Court may afford the claimant meaningful review of the SSA's ultimate findings. *Steele*, 290 F.3d at 941. It is not enough that the record contains evidence to support the ALJ's decision; if the ALJ does not rationally articulate the grounds for that decision, or if the decision is not sufficiently articulated, so as to prevent meaningful review, the Court must remand. *Id.*

## **ANALYSIS OF MS. LAND'S ARGUMENTS**

Ms. Land challenges the Commissioner's decision based on the ALJ's findings with respect to her mental impairments. Ms. Land first argues that the ALJ's credibility determination is not supported by substantial evidence. Second, Ms. Land argues that the ALJ failed to adequately account for her mental impairments in assessing her RFC.

## 1. THE ALJ'S CREDIBILITY DETERMINATION

The ALJ is in the best position to evaluate the credibility of a witness; however, his finding will be reversed if it is "patently wrong." *Collins v. Barnhart*, 533 F. Supp.2d 809, 819 (N.D. Ill. 2008), *citing Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Although an ALJ's credibility determinations are entitled to special deference, the ALJ is still required to "build an accurate and logical bridge between the evidence and the result." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). Accordingly, an ALJ's credibility finding should only be upheld if the ALJ gives specific reasons for the finding which are supported by substantial evidence. *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009), *citing Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

In this case, the ALJ determined that Ms. Land was not fully credible. R. 30. Specifically, the ALJ stated that her "subjective report of mental health symptoms at the hearing reflect a greater intensity and degree of symptoms than those reflected in the record of treatment" R. 30. In support of this finding, the ALJ details the evidence from the record that he considers in making his credibility finding. The ALJ reasoned that Ms. Land's affective and impulse control disorders have not required psychiatric hospitalization or emergent outpatient treatment; that she has been assigned GAF scores of 55 and 60-

65; and that she can perform independent activities of daily living ("ADLs"). R. 30. The ALJ further explained that there is no evidence that Ms. Land "has significant difficulty maintaining appropriate social interaction with others." *Id.* He also noted that Ms. Land's cognitive functioning was intact and she generally expressed logical, coherent thoughts using speech at a regular rate and rhythm. R. 30. Based on all of these factors, the ALJ was "not persuaded that [Ms. Land's] mental symptomatology is debilitating or unmanageable to preclude the performance of simple routine tasks consistent with unskilled work and no more than occasional contact with the general public." R. 30.

In arguing that the ALJ's credibility determination is patently wrong, Ms. Land states that the ALJ placed undue weight on her household activities in assessing her ability to hold a job. Mot. at p. 7. Ms. Land reasoned that the ALJ failed to explain how her ability to occasionally grocery shop, drive, and cook translates into an ability to work a full-time, competitive job. However, the ALJ did not equate discrete activities with an ability to sustain full time employment. Rather, the ALJ noted the fact that Ms. Land's mental health symptoms "do not substantially interfere" with her daily activities, which include shopping, driving, cooking, and caring for her daughter, was one of many indications that her mental impairments were not

disabling. R. 30. The ALJ's consideration of the impact of Ms. Land's mental impairments on her activities of daily living was appropriate. *See Bunch v. Heckler*, 778 F.2d 396, 401 (7th Cir. 1985). In addition, the ALJ's assessment of Ms. Land's activities of daily living was only one factor considered in his credibility assessment.

Ms. Land also argues that the ALJ ignored substantial evidence of her irritability and anxiety (which support marked limitations in maintaining social functioning), while concentrating on the fact that she was not hospitalized for mental impairments. Mot. At p. 7. Ms. Land argues that the ALJ ignored the treatment notes from her therapy which repeatedly reference her anxiety, mood swings, irritability and anger. R. 178, R. 184, R. 223-26, R. 276, R. 280, R. 513, R. 517. *Id.* at p. 8. However, the ALJ went into detail in assessing Ms. Land's treatment, including her mental impairment therapy. R. 28-29. The ALJ also considered that Ms. Land had not been hospitalized for mental impairments when assessing Ms. Land's allegations, but not exclusively. The ALJ appropriately considered Ms. Land's treatment in determining her credibility. *See* SSR 96-7p (noting treatment received is one factor in determining credibility).

Finally, Ms. Land argues that the ALJ relied too heavily on the GAF scores. The GAF scores, without more, carry little probative value. *See Curry v. Astrue*, No. 3:09-cv-565, 2010 WL

13

4537868, at *7 (N.D. Ind. Nov. 2, 2010). However, in his decision, the ALJ notes that he took Ms. Land's GAF scores into consideration, along with several other factors. In addition to the GAF scores, as set forth above, the ALJ notes that he considered Ms. Land's medical and social history, the objective medical evidence in the record, and her activities of daily living. R. 30. The ALJ did not rely on the GAF scores alone here. Instead, the ALJ points out that the GAF scores showing moderate to mild limitations were one piece of the evidence in the record indicating that Ms. Land's allegations of disabling mental impairments were not completely credible.

The ALJ's credibility assessment regarding Ms. Land's mental limitations was based on substantial evidence and the ALJ built a logical bridge between the evidence he cited and his conclusion. R. 30. Therefore, Ms. Land's request for summary judgment based on the ALJ's credibility determination is denied. The ALJ's finding regarding Ms. Land's credibility is not overturned on review.

### 2. **THE ALJ'S RFC DETERMINATION**

At the fourth and fifth steps of the Sequential Evaluation process, the ALJ must assess the claimant's RFC. 20 CFR §404.1520(e). The RFC is an assessment of the maximum work-related activities a claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-1001 (7th

Cir. 2004), *citing Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); 20 CFR §404.1545(a)(1). Social Security regulations require that the RFC assessment be "based on all the relevant evidence in the record." *Id*. at 1001, citing 20 CFR §404.1545(a)(1). SSR 96-8p further requires that the RFC assessment include a "function-by-function" assessment and explains that the mental functions involved in competitive work include the ability to "respond appropriately to supervision, co-workers and work situations…."

Ms. Land argues that the ALJ's RFC defies meaningful review, because he only limited Ms. Land to occasional contact with the general public, despite giving "great weight" to Dr. Spear's opinion, which suggests that she should have limited contact with co-workers as well. Mot. at pp. 6-7. Ms. Land argues that the ALJ failed to explain 1) whether or not he disagreed with Dr. Spear concerning her interactions with co-workers, and 2) how he reached his conclusion concerning social interactions. Mot. at p. 9-11.

Ms. Land argues that the ALJ ignored evidence in the record regarding her mental impairments when assessing the RFC determination, including: that she does not "like to be bothered with being around people" (R. 48), that she does not socialize like she used to (R. 49), and that she does not get along with her children (R. 50). Mr. Hart explained that Ms. Land has a

15

"short fuse" and is mad "the majority of the time" (R. 71-2). In prehearing forms, Ms. Land explained that she does not get along with authority figures well and has been "in trouble a lot" (R. 152). Her treatment notes repeatedly refer to her irritability and anger (R178, 184, 223-6, 276, 280, 513, 517).

In making his RFC determination, the ALJ noted that Ms. Land had "moderate difficulties" in social functioning.  R. 26.  The ALJ noted that there was "no evidence within the record that the claimant has significant difficulty maintaining appropriate social interaction with others, as would be indicated by a history of verbal altercations or assaultive behavior resulting in legal charges, for instance." R. 30.  The ALJ also noted that, although Ms. Land claimed to be withdrawn from and to avoid public or social settings because of her symptoms, "she has availed herself of the necessary social services and support to satisfy care requirements to maintain custody of her infant daughter."  R. 30.  Nevertheless, the ALJ limited Ms. Land to no more than occasional contact with the general public.  R. 26. Ms. Land contends that the ALJ's supposed reliance on Dr. Spear's opinions is puzzling, given that Dr. Spear opined that she should have limited interactions with co-workers, as well as the public.  But that is not entirely true.  Dr. Spear did check the boxes on the form noting that Ms. Land was moderately limited both in terms of dealing with the general public and in

her ability to "get along with coworkers or peers without distracting them or exhibiting behavioral extremes." R. 289. But, based on the narrative section of his report, that appears to be based on Ms. Land's report that she has "some difficulties dealing with others." R. 290. Dr. Spear assessed Ms. Land as a 60-65 on the Global Assessment of Functioning Scale, indicating "some difficulty in social functioning" "but generally functioning pretty well." DSM-IV, p. 32. That GAF score falls at the high end and above the range where one might expect to see conflicts with peers or co-workers. *Id.*

The ALJ's limitations regarding Ms. Land's social interaction with the general public, without further limiting her interactions with supervisors and co-workers, is in line with the State agency psychologists to whom the ALJ gave great weight, and it is, therefore, supported by substantial evidence. Ms. Land's request for reversal based on the ALJ's RFC determination is denied.

**CONCLUSION**

For the reasons set forth above, the Court finds that the Commissioner's decision in Ms. Land's case was supported by substantial evidence and free from error. Accordingly, Ms. Land's motion for summary judgment [#17] is denied.

Date: May 27, 2014

E N T E R E D:

*[signature]*

UNITED STATES DISTRICT COURT